IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

INFINITY ENERGY RESOURCES,

Plaintiff,

v.                                                    Case No. 12-2685-JTM

ST. PAUL FIRE & MARINE
INS. CO.

FIREMAN'S FUND INS.
CO. OF CALIFORNIA

Defendants.

MEMORANDUM AND ORDER

The following matter comes to the court on defendants' motions to dismiss (Dkt.

51, Dkt. 55). Having considered the arguments in the motions, responses and replies,

the court grants the defendants' Motions to Dismiss pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.

I. Factual Background

In 2008 and 2009, Infinity Energy Resources ("Infinity") owned and operated an

oil well in Stephenville, Texas. Infinity insured the oil well through two policies with

Fireman's Fund Insurance Company of California ("Fireman") and one policy with St.

Paul Fire and Marine Insurance Company ("St. Paul").[1] On April 27, 2008, lightning

struck the oil well, causing damages and clean-up costs of $259,299.24. Fireman paid

Infinity $218,468.00. On March 13, 2009, Fireman terminated the insurance policy with

_____

[1]Infinity is incorporated in Kansas with its principal place of business in Kansas. Fireman is incorporated
in California with its principal place of business in California. St. Paul is incorporated in Minnesota with
its principal place of business in Minnesota.

Infinity because of its failure to pay the premium. On April 24, 2009, Infinity met with

Fireman's agent and, according to Infinity, the policy was reinstated.

On April 27, 2009, exactly one year after the first incident, lightning struck again.

Infinity estimated the second lightning strike caused $500,000 in damages to the oil

well. Fireman refused to make any further payment. St. Paul paid Infinity $21,825, but

refused to provide any additional payments. Infinity was unable to afford cleaning up

the pollution caused by the second lightning strike. As a result, the Texas Railroad

Commission, the agency responsible for pollution control, shut down Infinity's

operations. Infinity asserts that it was forced to liquidate its business and sell the oil

well for a nominal price and that the replacement cost of the well is $4,041,500.00.

The first Fireman policy sets a period of limitations on filing suit:

> **C. Legal Action Against Us**
> No one may bring us [sic] a legal action against us under this Coverage
> Part unless:
> 1. There has been full compliance with all the terms of this Coverage Part;
> and
> 2. The action is brought within 2 years After [sic] you first have
> knowledge of the direct loss or damage.

(Dkt. 52-2 at 17). The second Fireman policy establishes the same period of limitations:

> **Suit**
> You agree not to sue us or involve us in another action proceeding after 2
> years have past [sic] since you have discovered the occurrence giving rise
> to such action. If the state law applicable to this coverage requires a
> different time period within which suit may be brought, this provision is
> amended to conform to such law.

(Dkt. 52-4 at 8).

Similarly, Infinity's policy with St. Paul includes the following sections:

2

**Lawsuits Against Us**

**If your policy provides property or other first-party protection.** Any suit to recover on a loss under any property or other first-party protection provided by your policy must begin within two years after the date on which the direct physical loss or damage occurred to the property that's required to sustain such loss or damage for the loss to be covered under that protection.

. . . .

**How Statutory Or Regulatory Law Affects Your Policy**

Any part of your policy that conflicts with any requirement of statutory or regulatory law which applies is automatically changed to conform to that law.

(Dkt. 56-1 at 13–14).

Infinity filed this breach of contract suit against defendants Fireman and St. Paul on October 22, 2012 (Dkt. 1) and filed a Second Amended Complaint on February 14, 2013 (Dkt. 39). Infinity claims that Fireman and St. Paul breached their insurance agreements with Infinity when they did not fully compensate Infinity for damages to its oil well caused by two lightning strikes. Infinity also claims that Fireman and St. Paul committed vexatious refusals to pay for the damages to its oil well, entitling Infinity to additional statutory relief under KAN. STAT. ANN. § 40-256.

Fireman moves to dismiss for failure to state a claim upon which relief can be granted. Fireman contends that the policy Infinity's claim relies upon was not in place at the time of the second lightning strike. Fireman also contends that even if the policy was in place, the time to bring this action has run out under the terms of the contract. Fireman alleges that its agreements with Infinity were finalized in Colorado, making

Colorado substantive law applicable. Fireman argues that under Colorado law, a party, by contract with another, may limit the time to file suit even though the statute of limitations has not yet run. Alternatively, Fireman argues that Kansas law allows the same. Fireman alleges that the insurance contracts require Infinity to file suit within two years of the date of loss and that because Infinity filed suit beyond this timeframe, the breach of contract claim should be dismissed. Fireman further argues that the claim of vexatious refusal to pay may only be granted if the underlying breach of contract claim survives, and the underlying claim does not survive here.

St. Paul also moves to dismiss for failure to state a claim upon which relief can be granted, asserting virtually the same contractual period of limitation arguments as Fireman.[2] However, St. Paul also argues that its policy was only in place at the time of the second lightning strike, therefore, it cannot be held responsible for damages related to the first strike. Infinity does not contest that the St. Paul policy was only in place at the time of the second lightning strike.

Infinity asserts that Fireman should be estopped from relying on the contractual limitation defense. Infinity alleges that Fireman induced Infinity to believe that Fireman would pay for all damages from the first lightning strike, then refused to pay for damages from the second lightning strike due to a lapse in policy. Infinity argues that Fireman did not inform it about the contractual limitations of filing a timely suit. Likewise, Infinity claims that St. Paul should be estopped from relying on the

---

[2]St. Paul does not contend that Colorado law is applicable to its policy with Infinity because the policy between St. Paul and Infinity was finalized in Kansas. (Dkt. 56). Infinity does not dispute this fact.

contractual limitation defense, arguing that St. Paul's partial payment induced Infinity to believe that St. Paul would fully pay for the damages. Additionally, Infinity argues that St. Paul never told Infinity about the two-year contractual limitation.

**II. Standard of Review – Rule 12(b)(6) Motion to Dismiss**

Under Rule 12(b)(6), a defendant may move to dismiss any claim asserted by the plaintiff when the plaintiff has failed to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff's complaint, on its face, must contain sufficient facts to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff bears the burden of pleading sufficient facts that, taken as true, suggest he is entitled to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 550 U.S. 544, 556 (2007)). These facts must be enough to raise a right to relief above the merely speculative level. *Id.* The plaintiff must "nudge his claims across the line from conceivable to plausible." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal citations omitted). A claim is facially plausible when its factual content "allows the court to draw the reasonable inference that the defendant is liable" for the alleged harm. *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).

The court must accept all facts in the complaint as true and disregard any legal conclusions. *Id.* The court may draw on its judicial experience and common sense to determine whether the complaint states a plausible claim for relief. *Id.* at 1236 (citing *Iqbal*, 556 U.S. at 679). However, when allegations are so general as to encompass wide-

ranging conduct, much of it innocent, the plaintiff has not met his burden and the claim will be dismissed. *See Robbins*, 519 F.3d at 1247 (10th Cir. 2008).

Generally, the court must treat a motion to dismiss under FED. R. CIV. P. 12(b)(6) as a motion for summary judgment when matters outside of the pleadings are presented to—and not excluded by—the court. FED. R. CIV. P. 12(d). If a document central to the plaintiff's claim was not attached to the complaint, the defendant may submit an indisputably authentic copy of that document with the motion to dismiss. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). In that instance, the court will not apply summary judgment standards, but instead apply the standards for a motion to dismiss. *Id.*

## III. Analysis

The court holds that Infinity's claims for breach of contract and vexatious refusal must be dismissed because Infinity's contracts with Fireman are subject to Colorado law, the contracts required Infinity to file suit within two years of the loss, and Infinity filed this suit beyond that timeframe; Infinity's contract with St. Paul is subject to Kansas law, the contract required Infinity to file suit within two years of the loss, and Infinity filed this suit beyond that timeframe; Infinity does not assert sufficient facts indicating that either Fireman or St. Paul is subject to estoppel; and the vexatious refusal claims against Fireman and St. Paul cannot survive when the breach of contract claims are dismissed.

**A. Choice of Law**

The claims in this case arise under diversity jurisdiction pursuant to 28 U.S.C. § 1332. In a diversity action, the court must apply the substantive law of the forum state, including the forum's choice of law rules. *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). In Kansas, the substantive law of the state where the insurance contract is made must be applied to the contract. *Safeco Ins. Co. of Am. v. Allen*, 941 P.2d 1365, 1372 (Kan. 1997). "For choice of law purposes, a contract is 'made' where the last act necessary to complete the contract occurs." *State Farm Mut. Auto. Ins. Co. v. Baker*, 797 P.2d 168, 171 (Kan. App. 1990). Generally, the last act for making an insurance policy is where the master policy is delivered. *Simms v. Metro. Life Ins. Co.*, 685 P.2d 321, 325–26 (Kan. App. 1984) (finding the majority rule to be that the interpretation of an insurance contract is governed by the law of the state where the policy is delivered and holding the same for a Tennessee policy).

Although Fireman alleges that its second insurance policy was not in effect, alternatively, Fireman argues that both policies were delivered to Infinity in Denver, Colorado. Infinity does not dispute this assertion. The last act necessary to complete the two contracts occurred in Colorado, so Colorado substantive law governs Infinity's agreements with Fireman. *See Simms,* 685 P.2d at 325–26.

Infinity's insurance policy with St. Paul arises under Kansas law. St. Paul alleges that the insurance policy was delivered to Infinity in Overland Park, Kansas. Infinity does not dispute this matter. The last act necessary to complete the contract occurred in Kansas, so Kansas substantive law governs Infinity's agreement with St. Paul. *See id.*

**B. Infinity's Claims Against Fireman Are Time-Barred**

Infinity's breach of contract claims against Fireman are dismissed because the parties agreed that suits concerning the policies must be filed no later than two years from the date of the loss, and Infinity filed this suit well after two years of each lightning strike.

Under Colorado law, "parties to a contract may require that actions founded on the contract be commenced within a shorter period of time than that prescribed by the applicable statute of limitations." *Grant Family Farms, Inc. v. Colorado Farm Bureau Mut. Ins. Co.*, 155 P.3d 537, 539 (Colo. App. 2006) (finding that COLO. REV. STAT. § 13–80–101(1)(a) (2003) "contains no language prohibiting contractually shortening the three-year limitations period," therefore, a shorter contractual limitations period "is not 'in conflict' with" the statute). Contracts will be enforced as written unless the contract contains an ambiguity. *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). An insurance policy is considered ambiguous only when it is "susceptible on its face to more than one" reasonable interpretation. *State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384, 387 (Colo. 1997). To determine whether there is ambiguity in an agreement, the court must evaluate the insurance policy as a whole. *Id.*

Disagreement between the parties concerning the interpretation of the document does not create ambiguity. *Id.* The court must use the plain and generally accepted meaning of the words in the agreement, unless the agreement provides an alternative interpretation. *Id.* When the insurance policy is unambiguous, the policy "must be given effect according to the plain and ordinary meaning of its terms." *Id.*

The plaintiff in *Grant* was attempting to recover for damages under an insurance policy. 155 P.3d at 537. The policy required the party to file suit within two years of loss, but a secondary clause revised policy terms that were "in conflict" with state statutes to conform with those statutes. *Id*. The court in *Grant* determined that such "conflict" only arises if a statute prohibits the parties from contracting a shortened time to file suit. *Id*. at 538. The court found that COLO. REV. STAT. § 13–80–101(1)(a), the applicable Colorado statute of limitations, creates no such prohibitions on contracting shorter limitations periods. *Id.* at 539. The court in *Grant* concluded that parties are free to reduce their time to file suit to a time less than that set out by statute, and that these contractual time limits are not in conflict with longer statutory periods of limitations. *Id*.

Here, there are two applicable provisions: one in the first policy and one in the second policy.[3] The first policy states that "[n]o one may bring us [sic] a legal action against us under this Coverage Part unless . . . [t]he action is brought within 2 years After [sic] you first have knowledge of the direct loss." (Dkt. 52–2 at 17). Infinity does not address the first policy. On its face, this policy advances only one interpretation, that a suit cannot be filed more than two years after learning of the direct loss. The language is not ambiguous, so the court gives effect to the plain meaning of these terms. *State Farm Mut. Auto. Ins. Co.*, 940 P.2d 384, 387 (Colo. 1997). This agreement is not prohibited by Colorado statute or case law. *See Grant Family Farms, Inc.*, 155 P.3d at 539. The provision in this first policy bars Infinity's breach of contract claim on the first

---

[3]Fireman provided copies of both policies to the court. Although not included in Infinity's Second Amended Petition, both policies are central to Infinity's complaint. Infinity has not disputed the authenticity of the documents submitted by Fireman. The court will consider these policies and proceed with the standards for a motion to dismiss and not summary judgment. *See Smith*, 561 F.3d at 1098.

lightning strike because it filed its claim more than four years after Infinity had knowledge of the damage to its oil well.

The second policy bars suit after two years of "the occurrence giving rise" to the suit. (Dkt. 52–4 at 8). The policy further provides that "[i]f the state law applicable to this coverage requires a different time period within which suit may be brought, this provision is amended to conform to such law." (Dkt. 52–4 at 8). Infinity argues that the two-year restriction in this policy is modified by the policy's succeeding language and must be voided to meet the requirements of Colorado's statute of limitations.

Even if this second policy was in place at the time of the second lightning strike—which Fireman disputes—the two-year limitation is valid under Colorado law. The language used in this second policy is unambiguous. *See State Farm Mut. Auto. Ins. Co.*, 940 P.2d 384, 387 (Colo. 1997). The only way that the two-year limitation could be altered is if Colorado law "requires" a different time period. (Dkt. 52–4 at 8). The agreement provides no alternative interpretation, so the court uses the plain and generally accepted meaning of the words in the agreement. *See State Farm Mut. Auto. Ins. Co.*, 940 P.2d 384, 387 (Colo. 1997)..

The word "require" means "to demand as necessary or essential." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 1929 (1981). When a statute expressly prohibits such agreements, then a court will invalidate such provisions. *See Wulf v. Farm Bureau Ins. Co. of Nebraska*, 205 N.W.2d 640, 642 (Neb. 1973) (citing with approval to Neb. Rev. Stat. § 44-357 which expressly prohibits insurance companies from limiting actions to less than the time set out in the statute of limitations).

Colorado's statute of limitations only requires that a claim on breach of contract be filed "within three years after the cause of action accrues, and not thereafter." COLO. REV. STAT. § 13–80–101(1)(a). The statute does not require all plaintiffs with claims sounding in contract law be given a minimum of three years to bring suit. As the court in *Grant Family Farms, Inc.* held, a two-year period of limitations on a contract claim does not conflict with the statute. 155 P.3d at 539.

Infinity's second policy with Fireman, even if it was deemed in force at the time of the second lightning strike, bars Infinity's claim of breach of contract beyond two years from the date of the loss. Infinity's second breach of contract claim against Fireman was filed more than three years after the oil well was damaged, and therefore, that breach of contract claim must also be dismissed.

**C. Infinity's Claim Against St. Paul Is Time-Barred**

Infinity's breach of contract claim against St. Paul is dismissed because the parties contractually agreed that any suit must be filed no later than two years from the date of the loss, and the second lightning strike happened more than two years before Infinity filed this suit. Kansas law does not prohibit contractually shortening the generally applicable statute of limitations for an action. *See Pfeifer v. Fed. Exp. Corp.*, 2013 WL 2450531 at *2 (Kan. June 7, 2013). If the language in a written contract "is clear and can be carried out as written, there is no room for rules of construction." *Gore v. Beren*, 867 P.2d 330, 337 (Kan. 1994) (internal citation omitted). To be considered ambiguous, a written contract "must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Id.*

11

When reviewing an unambiguous contract, the "words used therein are to be given their plain, general and common meaning, and a contract of this character is to be enforced according to its terms." *Bettis v. Hall*, 852 F. Supp. 2d 1325, 1334 (D. Kan. 2012) (internal citations omitted).

Under Kansas law, an action upon a contract "shall be brought within five (5) years." KAN. STAT. ANN. § 60-511(1) (2012). However, absent other public policy considerations, Kansas law allows parties to contractually agree to limit the time in which to file suit. *See Pfeifer*, 2013 WL 2450531 at *2 (holding that § 60-501 allows contractually limiting the time in which to sue, but that public policy invalidated the provision at issue because it impaired enforcement of workers compensation protections).

On certification from the U.S. Court of Appeals for the Tenth Circuit, the Kansas Supreme Court recently reviewed a contractual agreement that limited the time the plaintiff could file suit. *Id.* at *1. In *Pfeifer*, the plaintiff was a former employee of defendant. *Id.* Plaintiff filed her lawsuit fifteen months after she was terminated, alleging her termination was in retaliation for exercising her rights under the Kansas Workers Compensation Act. *Id.* Such actions have a two year statute of limitations. *Id.* The defendant argued that the plaintiff was bound by her employment contract, which required any suit to be filed within six months of termination. *Id.* at 2.

The Kansas Supreme Court turned to the history of statutes of limitations in Kansas. In 1868, Kansas law allowed—and the courts routinely upheld—an agreement between parties to reduce the time to file suit. *Id.* at *4; *see also, McElroy v. Insurance Co.*,

29 P. 478 (Kan. 1892) (holding an insurance contract valid even though it included a provision requiring action within a shorter period than provided by statute); *Insurance Co. v. Stoffels*, 29 P. 479 (Kan. 1892) (determining a 6–month limitation in insurance policy eliminates all statutes of limitations and binds parties). In 1897, the legislature enacted a statute that voided provisions in any agreement that reduced a party's time to file suit to less than that established by the statutes of limitations. *Pfeifer*, 2013 WL 2450531 at *4. Thereafter, Kansas courts invalidated agreements that shortened limitations periods. *Id.; see also*, *Erickson v. Commercial Travelers*, 176 P. 989 (Kan. 1918) (voiding accident insurance contract that required suit within 6 months of injury because statute provided for longer period); *Fair Association v. Casualty Co.*, 190 P. 592 (Kan. 1920) (invalidating stipulation as contrary to statute when casualty insurance contract required action to be filed within 90 days of loss); *Hornick v. First Catholic Slovak Union of the United States of Am.*, 224 P. 486, 489 (Kan. 1924) (noting that contractually shortened limitations had been invalidated by statute since 1897). However, in 1963, the legislature repealed that statute. *Pfeifer*, 2013 WL 2450531 at *4.

Based on prior case law and the repeal of the aforementioned statute, the Kansas Supreme Court in *Pfeifer* held contractual limitations on the time to file a suit are generally valid. *Id.* at *5–6. The Court in *Pfeifer* ultimately invalidated the restriction in the contract at issue in that case because it impaired Kansas's "strongly held public policy interest" of worker's compensation and retaliatory action. *Id.* at *9. However, the Kansas Supreme Court noted several cases that would be valid because they did not trigger underlying public policy concerns. *See id.* at *7 (finding no public policy

concerns at issue under the insurance policy at issue in *Coates v. Metro. Life Ins. Co.*, 515 F. Supp. 647, 649 (D. Kan. 1981)). Thus, under Kansas law, when a contract does not violate an articulated public policy, parties may agree by contract to limit the time to file suit, even if the applicable statute of limitations allows for a greater time period. *Pfeifer*, 2013 WL 2450531 at *2.

Additionally, the U.S. District Court for the District of Kansas has previously determined that Kansas law does not prohibit parties from contractually limiting the timely filing of suits. *Sibley v. Sprint Nextel Corp.*, 2008 WL 2949564 n.7 (D. Kan. July 30, 2008); *Hahner, Foreman & Harness, Inc. v. AMCA Int'l Corp.*, 1995 WL 643814 at *2 (D. Kan. Oct. 27, 1995); *Coates*, 515 F. Supp. at 649.

The provisions in Infinity's contract with St. Paul clearly restrict Infinity's window to file suit to two years after the damage to the oil well occurred. St. Paul provided a copy of the policy to the court.[4] The insurance policy requires that any such suit "must begin within two years after the date . . . damage occurred to the property." (Dkt. 56-1 at 13). Although a subsequent clause of the contract modifies the entire document, it does so only when the policy "conflicts with any requirement of statutory or regulatory law." (Dkt. 56–1 at 14). The reasonable interpretation of this language does not provide for a conflicting meaning. *See Gore*, 867 P.2d at 337 (Kan. 1994). The time-restrictive provision of the policy will only be modified when it "conflicts" with Kansas law. As there is no ambiguity here, the court must use the plain meaning of

---

[4]As with the policies provided by Fireman, this policy is central to Infinity's complaint, and Infinity has not disputed the document's authenticity. The court considers this insurance policy and proceeds with the standards for a motion to dismiss and not summary judgment. *See Smith*, 561 F.3d at 1098.

words used. *Bettis*, 852 F. Supp. 2d at 1334. Conflict means "to show variance, incompatibility, irreconcilability or opposition." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 476–77 (1981).

The policy is not irreconcilable with, or in opposition to, Kansas law. The statute of limitations does not limit parties' ability to contract to a time less than that in the statute. *See* KAN. STAT. ANN. § 60-511(1) (2012), *Pfeifer*, 2013 WL 2450531 at *5. Such agreements are not in opposition to Kansas law because, absent other public policy concerns, Kansas law allows parties to contractually agree to limit the time for filing suit. *Pfeifer*, 2013 WL 2450531 at *2. Here, the workers compensation public policy concerns present in *Pfeifer* are not relevant. Infinity's policy with St. Paul is not incompatible, irreconcilable, or in opposition with Kansas law, so the two-year contractual limitation is valid. *See id.* This policy required Infinity to file suit no later than two years after the date the damage occurred to its oil well. Infinity brought suit more than three years after the second lightning strike to the oil well. Accordingly, the court dismisses Infinity's breach of contract claim against St. Paul.

### D. Infinity's Estoppel Argument Against Fireman

Infinity argues that Fireman should be estopped from asserting the contractual limitations within the insurance policies. But the court holds that Infinity has not met its burden to establish facts for this doctrine. Equitable estoppel arises not out of contract but from concepts of morality and justice. *Toshiba Master Lease, Ltd. v. Ottawa Univ.*, 927 P.2d 967, 972 (Kan. App. 1996); *see also*, *Computer Associates Int'l, Inc. v. Am. Fundware, Inc.*, 831 F. Supp. 1516, 1530 (D. Colo. 1993) (explaining that under Colorado law,

equitable estoppel is only used to prevent manifest injustice). The facts of each case determine whether the court will apply the doctrine of equitable doctrine. *Aimonetto v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 365 F.2d 599, 600 (10th Cir. 1966). Equitable estoppel is not favored under Colorado law. *Nicholls v. Zurich Am. Ins. Grp.*, 244 F. Supp. 2d 1144, 1157 (D. Colo. 2003). Under the doctrine of equitable estoppel, the plaintiff must show that (1) the defendant knew the pertinent facts; (2) the defendant intended his conduct be acted on by the plaintiff or the defendant acted in such a way that it caused the plaintiff to reasonably believe defendant intended the conduct; (3) the plaintiff must be ignorant of the pertinent facts; and, (4) the plaintiff's reliance on defendant's conduct resulted in plaintiff's injury. *Dove v. Delgado*, 808 P.2d 1270, 1275 (Colo. 1991), *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 858 (Colo. Ct. App. 2007).

Infinity has not pleaded facts that satisfy the necessary elements of equitable estoppel. Pleadings include complaints, but not motions; therefore, the court must look to the pleadings for the facts asserted by Infinity. FED. R. CIV. P. 7(a),(b); *see, Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1177 (10th Cir. 2005). Infinity does not assert any facts that Fireman knew or that Infinity was ignorant of the two-year contractual limitation on filing suit. Additionally, Infinity provides no facts that indicate Fireman acted intentionally to prevent Infinity from filing its claims within two years. Infinity also does not assert facts to show that because of Fireman's conduct, Infinity reasonably believed it had more than two years to file suit.

Infinity cites *Coates* for the proposition that it is entitled to estoppel because Fireman covered a portion of the claims and allegedly represented that it would cover the remaining portion of the claims. However, *Coates* is readily distinguishable from the current case. In *Coates*, a federal employee was covered under a group life insurance policy that required suit to be filed within two years of the date of loss. 515 F. Supp. at 648. Upon the employee's death, and before the limitations period expired, the decedents requested a copy of the policy from the defendants. *Id.* The full copy of the policy was unavailable due to the policy's size and location; however, defendants sent a specimen copy and certificate of insurance to the decedents. *Id.* at 648–49. Neither document indicated that the parties were contractually required to file suit within two years, and defendant did not inform plaintiff about the two-year limitation in any other manner. *Id.* at 648–49. Based on those unique circumstances, the court determined that the defendant owed plaintiffs a duty to inform them of the suit limitation clause. *Id.* at 651. Finding that duty breached, the court held the defendant estopped from asserting the limitation clause. *Id.* However, the court stopped short of finding that insurance companies have a general duty to inform the insured of contractual limitations on filing suit. *Id.* at 650–51.

Here, Infinity has not provided any facts to show it lacked a copy of its insurance policy with Fireman. Infinity does not allege that it requested a copy of the policy from Fireman or that Fireman provided a copy *sans* the contractual limitations at issue. Infinity does not allege that Fireman represented throughout the limitations period that it would pay all of the damages from either lightning strike, only to refuse to pay after

the limitations period had run. The court finds Infinity has not established that Fireman should be estopped from asserting the contract limitation. *See Dove v. Delgado*, 808 P.2d 1270, 1275 (Colo. 1991).

**E. Infinity's Estoppel Argument Against St. Paul**

Likewise, Infinity has not met its burden to show that St. Paul should be estopped from asserting the contractual limitations within its insurance policy. Under Kansas law, a court may invoke its authority under equitable estoppel to hold a person to his prior position or representation when otherwise inequitable consequences would result to another who relied upon the person's position in good faith. *Hartford Underwriters Ins. Co. v. Kansas Dept. of Human Resources*, 32 P.3d 1146, 1155 (Kan. 2001). The plaintiff has the burden of alleging sufficient facts to establish that equitable estoppel is appropriate. *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 561 P.2d 792, 795 (Kan. 1977). The facts cannot be ambiguous or subject to more than one construction. *Fleetwood Enterprises, Inc. v. Coleman Co., Inc.*, 161 P.3d 765, 777 (Kan. App. 2007). The plaintiff must show that:

> (1) he or she was induced to believe certain facts existed by another party's acts, representations, admissions, or silence when the other party had a duty to speak, (2) he or she relied and acted upon such belief, and (3) he or she would now be prejudiced if the other party were allowed to deny the existence of such facts.

*Id.* If any essential element is lacking or is not satisfactorily shown, there can be no equitable estoppel. *Gillespie v. Seymour*, 823 P.2d 782, 130–31 (Kan. 1991).

Infinity has not shown facts that St. Paul acted in any way to cause Infinity to not file suit within two years, as the insurance policy requires. *See Fleetwood Enterprises, Inc.*,

161 P.3d at 777. Infinity has not shown that St. Paul had any duty to affirmatively warn Infinity about the two-year limitations period within the policy. *See id.* Likewise, Infinity has not provided facts that it relied upon, or failed to act because of, St. Paul's silence. Infinity does not claim that its access to the terms of the policy was restricted. Therefore, St. Paul is not estopped from relying upon the two-year contractual limitation to filing suit.

**F. Infinity's vexatious refusal claims are dismissed because the underlying claims are dismissed.**

Infinity's vexatious refusal claims against Infinity and St. Paul are dismissed because the underlying breach-of-contract claims are dismissed. Under Kansas law, the court must order the insurance company to pay reasonable attorney fees in favor of the insured when the court renders judgment against the company for refusing, without just cause, to pay the full amount of loss. KAN. STAT. ANN. § 40–256 (2012). When no judgment is rendered in favor of the insured, no attorney fees are available. Here, the court has dismissed the breach of contract claims against the insurance company. Accordingly, the court also dismisses the remaining vexatious refusal claims.

**IV. Conclusion**

The court finds that Infinity is barred by the contractual two-year periods of limitations found in all of the insurance contracts that form the bases for its claims. The court also holds that applying the doctrine of estoppel against the defendants would be inappropriate. Finally, Infinity's claims of vexatious refusal cannot survive without the

underlying breach of contract claims. The court grants the defendants' motions to dismiss.

IT IS THEREFORE ORDERED this 19th day of July, 2013, that the defendants' motions to dismiss (Dkt. 51 and 55) are granted.


s/J. Thomas Marten
J. THOMAS MARTEN, JUDGE